UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

SEP 2 1 2005

Michael N. Milby, Clerk of Court

MICHIGAN MUTUAL INSURANCE §
COMPANY, §
§
    Plaintiff, §
VS. § CIVIL ACTION NO. H-05-0754
§
ALLIANCE CONSTRUCTION INC, *et al*, §
§
    Defendant. §

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court are the plaintiff, Michigan Mutual Insurance Company's (Michigan Mutual), motion for summary judgment and motion to dismiss the defendant, Hope Lutheran Church's (Hope) counterclaim. Michigan Mutual appropriately describes this suit as "an insurance coverage dispute" tied to commercial general liability policies issued to the defendant, Alliance Construction, Inc. (Alliance). This suit seeks to declare the rights and obligations of the parties herein subject to a contractual arbitration provision between both defendants.[1] Hope asserts declaratory relief is barred by the underlying arbitration and claims that its third-party beneficiary status provides rights under the policies.

After considering the motions, the pleadings, and the applicable law, this Court determines that the plaintiff's motion for summary judgment should be GRANTED.[2]

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December of 1993, Hope contracted with Alliance and Tackett Lodholz Architects, Inc., for the building of a sanctuary structure in Friendswood, Galveston County, Texas. Incident to

---

    [1]Due to Alliance's failure to enter an appearance in this action, this Court entered a default against Alliance (Docket No.23).
    [2]As the granting of summary judgment is dispositive of the issues presented in Michigan Mutual's motion to dismiss and Hope's counterclaim, this Court does not reach them here.

the performance of the contract, Associated Testing Laboratories conducted a soil analysis upon the soil where the foundation was to be laid. The soil report provided to Hope, Alliance, and Tackett, allegedly, was never utilized in the design and construction of the sanctuary unbeknownst to Hope. When the resulting foundation and structure began demonstrating structural failings, Hope hired Lenert Engineers, Inc. to independently evaluate and record any failings. Soon thereafter, Hope commenced the underlying lawsuit[3] by filing its original petition in a Galveston County, court, asserting breach of contract and violations of the Texas Business & Commerce Code § 17.00 *et. seq.*, (DTPA).[4]

Michigan Mutual had issued its Commercial General Liability (CGL) policies insuring Alliance and providing coverage against certain liabilities.[5] Upon discovering that a suit had been initiated against their insured, Michigan Mutual instituted the instant action seeking a declaration of legal rights and duties concerning its liability under the policies. By counterclaim, Hope opposes Michigan Mutual's position asserting bad faith on the part of Michigan Mutual in failing to fulfill its statutory duties. Hope also seeks indemnity from Michigan Mutual for Alliance's alleged breach of contract and DTPA violations.

Alliance was duly served in the present matter and did not answer. Accordingly, default judgment was taken against Alliance. Thereafter, Michigan Mutual filed a motion for summary judgment and a motion to dismiss Hope's counterclaim. Hope has filed a response to each of Michigan Mutual's motions. Both parties have fully briefed their respective issues and arguments making final disposition of this action appropriate at this time.

### III. CONTENTION OF THE PARTIES

Michigan Mutual maintains the facts as asserted in Hope's original petition do not constitute

---

[3]Hope's lawsuit was cause no.. 02-CV-1083, styled *Hope Lutheran Church v. Alliance Construction , Inc. and Tackett Lodholz Architects, Inc.* in the 212th Judicial District Court. That suit was later dismissed due to an arbitration clause in the contract.

[4]The relevant facts are primarily a summary of the facts as plead by Hope in its suit against Alliance and Tackett.

[5]*See* CGL polciy number CPP 0294475, with an effective date of such policy from January 10, 2001 through January 10, 2002.

events that would extend the protection of the various policies. Specifically, it asserts that Alliance's work constitutes an intentional or negligent breach of contract, and therefore, coverage does not exist. Such conduct does not constitute an occurrence, as defined within the insurance policies. Further, Michigan Mutual insists that it has no duty to defend or indemnify Alliance in the underlying lawsuit. Finally, Michigan Mutual asserts that its policy exclusions specifically discharge the type of claim Hope is attempting to bring.

Hope counterclaims that Michigan Mutual has acted in bad faith, violating statutory duties owed to Alliance under the Texas Insurance Code including but not limited to Article 21.21. Additionally, Hope asserts that Michigan Mutual's request for declaratory relief is barred by the arbitration clause in the agreement between Hope and Alliance. Notwithstanding such provision, Hope argues that the policies provide coverage for Alliance's alleged breach of contract, and third-party beneficiary status affords it the standing necessary to assert Alliance's contract rights.

## IV. STATEMENT OF THE LAW

*A. Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324. Throughout the analysis, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 247-49. A failure on the part of the

nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *See Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

*B. Interpretation of Insurance Policies*

Commercial general liability (CGL) policies are typically occurrence-based policies wherein specific occurrences are explicitly defined before coverage may extend. CGL insurance policies parallel other liability insurance policies that embrace the *two obligations* of the insurance company: the *duty to defend* the insured from lawsuits seeking judgments, and a separate *duty to indemnify* the insured from any adverse judgments based on claims covered within the policy. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex. 2002).

Interpretation of insurance contracts in Texas is governed by the same rules of interpretation as other contracts, and when terms are defined in an insurance policy, those definitions control. *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 470 n.3 (5th Cir. 2001). In determining an insurer's duty to defend, courts apply the "eight corners" rule, examining the factual allegations in the petition and the language of the insurance policy. *Federated Mutual Ins. Co. v. Grapevine Excavation*, 197 F.3d 720, 726 (5th Cir. 2000). Courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether any claim asserted in the pleading is potentially within the policy's coverage. *Id.*

A liability insurer's duty to defend is triggered by the factual allegations of the pleadings, considered in light of the applicable policy provisions and without reference to the truth or falsity of the allegations without the use of extrinsic evidence. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). In reviewing the pleadings in light of the policy provisions, courts should focus on the facts alleged, not on legal theories plead. *Id.* Where a petition does not allege facts within the scope of the insurance policy's coverage, an insurer is not legally obligated to provide a defense. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997); *Nat'l Union*, 939 S.W.2d at 141.

The duty to indemnify is not as broad as the duty to defend. If the duty to defend is set

aside, the court renders a declaratory judgment that there will be no duty to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998). However, if a duty to defend is found, then ruling on the duty to indemnify is premature. *Id.*

## V. APPLICATION OF THE LAW

### A. Threshold Consideration of Coverage

All parties and the Court accept the facts as plead by Hope in the underlying proceeding. Before considering the contentions of either party, it is paramount in an insurance coverage dispute to establish the threshold matter of whether coverage, in fact exists. Quite simply, if a court finds that there is no coverage under the facts as alleged in the underlying petition, the core duties of the insurer to *defend* and *indemnify* are negated. *Id.* at 368. Moreover, each of Hope's arguments in opposition to Michigan Mutual's summary judgment motion is conditioned upon the policies extending coverage. Application of the well-established "eight corners" or "complaint allegations" rule provides the proper place to begin. If any of the claims in Hope's original petition when taken as true, state a cause of action within the policy terms, Michigan Mutual can be found to have breached its duty to defend. *See Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 605 (5th Cir. 1991).

A court gives the allegations in the petition a liberal interpretation, meaning that "in cases of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Nat'l Union*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 26 (Tex. 1965)).

### B. Hope's Factual Allegations

Here, is presented a rather elementary factual scenario. Hope, in its underlying petition, alleges that Alliance breached its contract to build the sanctuary by fraudulently concealing a construction deficiency. Particularly, Hope highlights Alliance's failure to use a ribbed slab design foundation as recommended by Associated Testing Laboratories, Inc. This sole factual

allegation is the basis for Hope's causes of action in contract and tort against Alliance. Assuming, without deciding, these facts to be true, the Court ascertains that Alliance's actions constitute an intentional or wilful breach of contract and is the proximate cause of injury to Hope. The nature of the origin of the damages alleged for "benefit of the bargain" and "DTPA treble damages," therefore, spring from Alliance's breach. The question to be resolved in this context is whether the factual allegations reveal a claim that is potentially within the coverage scope.

*C. Scope of Michigan Mutual's Insurance Policies*

"The burden is on the insured to show that a claim against him is potentially within the scope of coverage under the policies. However, if the insurer relies on the policies' exclusions, it bears the burden of proving that one or more of those exclusions apply." *Id.* (citing *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). Even if a plaintiff's underlying allegations do not clearly show that there is coverage, the insurer, as a general rule, is obligated to defend if there is, potentially, an action alleged within the coverage of the policy. *Heyden*, 387 S.W.2d at 26.

Here, Michigan Mutual issued its CGL policy to protect against certain liabilities. Those liabilities are confined to "property damage" or "bodily injury" caused by an "occurrence" that takes place during the policy period. *See King*, 85 S.W.3d at 187. As occurrence is an overriding limitation on the claim, logic dictates the analysis of coverage scope begin by defining an "occurrence." Michigan Mutual's policy adopts the universal definition of an "occurrence" as an "accident." *Id.* The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In Texas, an injury is accidental for purposes of liability insurance, "if from the viewpoint of the insured [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not be reasonably anticipated by the insured, or would not necessarily flow from the action or occurrence which caused the injury." *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999) (quoting *Republic Nat'l Life*

*Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex. 1976))(alteration in original).

An accident to one may be an opportunity to another. In this context, this Court relies upon the clear standard laid out by the Texas Supreme Court. Whether an occurrence is an accident, should be examined from the viewpoint of the insured. *See, e.g., King*, 85 S.W.3d at 188. In this case, determination of whether an "occurrence" is an "accident" must occur from Alliance's viewpoint. Utilizing the above well reasoned legal precedent and the plain language meaning interpretation of the policy, the scope of coverage is construed to be limited to accidents as they are commonly defined in tort from the viewpoint of the insured. Further, it is clear that any event that is not an accident is excluded from the scope of the policies.

*D. Allegations Outside Scope of Policy*

The Court is now faced with the proverbial task of placing a square peg in a round hole. Given the facts before this Court, no fit can be found. Hope's original petition alleges an intentional breach of contract. The damage to the foundation of Hope's sanctuary from the vantage of Alliance was the natural and probable consequence of Alliance's intentional breach of the contract and/or fraudulent concealment. Alliance received the proper specifications from Associated Testing Laboratories, Inc., and for whatever reason, disregarded the recommendations to Hope's detriment. Alliance's failure to heed such recommendations must be considered volitional and a disregard for established standards of construction and design. Hence, the property damage to the sanctuary was caused, not by an "occurrence" as an accident, but instead, the failure of Alliance to comply with the terms of the contract in the building construction and design. Thus, the breach of contract resulted in the structural property damage to Hope's sanctuary. The Court finds that the conduct alleged does not constitute an accident from Alliance's perspective.[6] Therefore, no "occurrence" has taken place, and the coverage scope is appropriately restricted.

---

[6]Hope asserts that it is the third-party beneficiary of Alliance with regards to the policies of insurance between Michigan Mutual and Alliance. Even assuming this to be true, Hope's petition is not favored because of the Court's findings and conclusions regarding Michigan Mutual's lack of liability.

## VI. CONCLUSION

The Court concludes that Hope's allegations *do not* create a duty to defend on the part of Michigan Mutual. As the duty to defend is broader than the duty to indemnify, the duty to indemnify is also foreclosed. 955 S.W.2d at 84. The facts alleged in support of such allegations and the vast expanse of applicable state and federal cases construing the definitions of "accident" and "occurrence" with respect to damages of the type incurred by Hope support the Court's decision. *Mid-Century Ins.*, 997 S.W.2d at 155.

The Court finds application of the "eight corners" rule is dispositive of each parties existing motions to dismiss and Alliance's counterclaim. *Republic Ins.Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Despite the invitation by Michigan Mutual, this Court does not the reach issue of "whether an intentional breach of contract can constitute an 'occurrence.'" The facts of this case do not so require. The Court merely holds that the facts as alleged in Hope's underlying original petition do not enter the sphere of coverage extended to Alliance. Accordingly, it is hereby

**ORDERED** that Michigan Mutual Insurance Company's Motion for Summary Judgment (Doc. 22) is **GRANTED**.

**SIGNED** at Houston, Texas, this 26/ day of September, 2005.

KENNETH M. HOYT
UNITED STATES DISTRICT JUDGE